**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

COVINGTON SPECIALTY
INSURANCE COMPANY,

               Plaintiff,

vs.                             Case No.  3:14-cv-425-J-32JRK

S. BROOKS BUSEY, JAMES HOUSE,
and RONALD WALL,

               Defendants.

_____/

### REPORT AND RECOMMENDATION[1]

### I.  Status

    This cause is before the Court on the following motions:

    1.    Defendant Ronald Wall's ("Defendant Wall['s]") "Motion to Dismiss or Otherwise Remove Case to State Court" (Doc. No. 9; "First Motion to Dismiss"), filed June 6, 2014. Plaintiff Covington Specialty Insurance Company ("Plaintiff") responded in opposition on June 20, 2014.  See "Plaintiff['s] Opposition to Defendant [] Wall's Motion to Dismiss or Otherwise Remove Case to State Court" (Doc. No. 11; "Response to First Motion to Dismiss"). Following the entry of an Order by the undersigned on December 10, 2014 directing Plaintiff to file a supplement (Doc. No. 34), Plaintiff then supplemented its response on December 23, 2014.  See "Plaintiff['s] Supplemental Response to Defendant [] Wall's Motion to Dismiss or

---

[1]    Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document.  Failure to file timely objections waives a party's right to de novo review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a); see also Dupree v. Warden, 715 F.3d 1295, 1300 (11th Cir. 2013).

Otherwise Remove Case to State Court" (Doc. No. 35; "Supplemental Response to First Motion to Dismiss").  As permitted by the December 10, 2014 Order and an Order entered January 14, 2015 (Doc. Nos. 34, 43), Defendants Wall and S. Brooks Busey ("Defendant Busey") replied on December 29, 2014 and January 2, 2015, respectively.[2] <u>See</u> "[Defendant] Wall's Objection to Plaintiff's Supplemental Response to Defendant Wall's Motion to Dismiss or Otherwise Remove Case [to] State Court and Incorporated Motion to Strike [] Plaintiff's Supplemental Response and Attachments Along With a Motion for Sanctions" (Doc. No. 36; "Defendant Wall's Reply Regarding First Motion to Dismiss")[3]; "Defendant [] Busey's Reply Memorandum on the Amount in Controversy" (Doc. No. 38; "Defendant Busey's Reply").

     2.     "Defendant Wall's Motion to Strike Exhibits Attached to Plaintiff['s] Opposition to Defendant Wall's Motion to Dismiss / Motion to Remove" (Doc. No. 12; "Motion to Strike"), filed June 24, 2014. Plaintiff responded in opposition on July 8, 2014.  <u>See</u> "Plaintiff['s] Opposition to Defendant [] Wall's Motion to Strike Exhibits Attached to Plaintiff's Opposition to Defendant Wall's Motion to Dismiss or Remove" (Doc. No. 16; "Response to Motion to Strike").  Defendant Wall replied on July 8, 2014.  <u>See</u> "Defendant Wall's Response to Plaintiff['s] Opposition to Defendant [] Wall's Motion to Strike Exhibits Attached to Plaintiff['s]

---

[2]     Although Defendant Busey is not a party to Defendant Wall's First Motion to Dismiss, the undersigned permitted Defendant Busey's Reply because it addresses an issue that could have a substantial effect on his rights in this action.

[3]     To the extent that Defendant Wall's Reply Regarding First Motion to Dismiss sought relief from the Court, it was denied.  <u>See</u> Order (Doc. No. 43), entered January 14, 2015.

Opposition to Defendant Wall's Motion to Dismiss/Motion to Remove" (Doc. No. 17; "Defendant Wall's Reply Regarding Motion to Strike").[4]

3.     "Defendant Wall's Second Motion to Dismiss" (Doc. No. 27; "Second Motion to Dismiss"), filed October 6, 2014.  Plaintiff responded in opposition on October 14, 2014.  See "Plaintiff['s] Opposition to Defendant [] Wall's Second Motion to Dismiss" (Doc. No. 30; "Response to Second Motion to Dismiss").

These motions were referred to the undersigned by the Honorable Timothy J. Corrigan, United States District Judge, for the issuance of a report and recommendation regarding an appropriate resolution.  See Order (Doc. No. 26), entered September 25, 2014; Endorsed Order (Doc. No. 29), entered October 8, 2014.[5]  Upon consideration of the Motions, the file, and the applicable law, the undersigned recommends that all of the Motions be denied and that Defendant Wall be directed to file a response to the Complaint within fourteen days of the entry of an order on these matters.

---

[4]     This Reply was filed in violation of Local Rule 3.01(c), which states that "[n]o party shall file any reply or further memorandum directed to the motion . . . unless the Court grants leave." Nevertheless, the undersigned considers it in rendering a recommendation on the Motion to Strike.  In the future, failure to comply with the Local Rules could subject filings to being stricken.

[5]     Also referred for a report and recommendation is an unrelated motion filed by Defendant House: "James House's Limited Appearance for the Sole and Only Purpose of Challenging Service of Process With Incorporated Motion to Quash Service of Process and Motion to Dismiss Plaintiff's Action Against Him" (Doc. No. 25), filed September 24, 2014, to which Plaintiff responded in opposition on October 7, 2014, see "Plaintiff['s] Opposition to Defendant [] House's Motion to Quash Service of Process and Motion to Dismiss" (Doc. No. 28).  See Order (Doc. No. 26), entered September 25, 2014.  Upon review of the parties' papers relating to this motion, the undersigned has determined that an evidentiary hearing is necessary to resolve contested issues of fact related to whether Defendant House has been properly served with process.  Accordingly, an evidentiary hearing is set before the undersigned for February 18, 2015, see Order (Doc. No. 44); a second report and recommendation on Defendant House's service motion will issue following the hearing.

## II.  Complaint

Plaintiff commenced this action on April 11, 2014 by filing the Complaint against Defendants House, Wall, and Busey pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  Compl. (Doc. No. 1) at 1 ¶ 1.  Plaintiff seeks a declaration "that it has no duty to defend or indemnify Busey with respect to personal injury claims being asserted by [Defendants House and Wall.]"  Id. at 1 ¶ 2 (some capitalization omitted).  The relevant alleged facts are as follows.

In June 2013, Defendant Busey bought a piece of property in Jacksonville, Florida.  Id. at 3 ¶ 13.  Defendant Busey obtained insurance to cover the property in the form of a Commercial General Liability Insurance Policy ("Policy") issued by Plaintiff to Defendant Busey covering the period of August 9, 2013 to August 9, 2014.  Id. at 2 ¶ 12.

Defendant Busey contracted with John Bamping ("Mr. Bamping") to construct a barn on the property.  Id. at 3 ¶ 14.  "[Mr.] Bamping in turn retained [Defendants] House and Wall to work on the roof of the barn."  Id. at 3 ¶ 15 (some capitalization omitted).  On about August 31, 2013, while "installing sheet metal on the roof of the barn following a rain storm," Defendant Wall fell from the roof and sustained injuries as a result.  Id. at 3 ¶ 16.  Defendant House also sustained injuries from attempting to prevent Defendant Wall's fall.  Id.

About a month later, "[o]n September 20, 2013, [Defendants] House and Wall made a demand on [Defendant] Busey to settle their personal injury claims" (the "Underlying Claims").  Id. at 3 ¶ 17 (some capitalization omitted).  Defendant Busey then tendered the demand to Plaintiff, and Plaintiff denied the demand "on the basis that coverage for the Underlying Claims does not exist and is excluded under the Policy."  Id. at 3 ¶¶ 17-18.

Plaintiff, however, "agreed to defend [Defendant] Busey with respect to the Underlying Claims, subject to a reservation of rights." Id. at 3 ¶ 19 (some capitalization omitted).

Plaintiff states that it included Defendants Wall and House in the instant suit because they "are putative third-party beneficiaries of the Policy and are therefore required to be named as parties in this action." Id. at 6 ¶ 32.  Plaintiff seeks "a Declaratory Judgment declaring the rights, status, obligations, and duties of the parties under [the Policy], including that the Policy does not afford coverage for the Underlying Claims, such that there is no duty to defend or indemnify [Defendant] Busey with respect to the Underlying Claims." Id. at 6 (both "Wherefore" clauses) (some capitalization omitted).

### III.  Discussion

Defendant Wall's First Motion to Dismiss is addressed together with his Motion to Strike, followed by his Second Motion to Dismiss.

### A.  First Motion to Dismiss / Motion to Strike

Defendant Wall moves to dismiss the Complaint, or alternatively, to "remove" the case to state court, arguing the following: the Court should decline to exercise permissive jurisdiction under the Declaratory Judgment Act, see First Motion to Dismiss at 1-3; complete diversity and the necessary amount in controversy have not been established by Plaintiff to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1332, see First Motion to Dismiss at 3-5; and Defendant Wall has improperly been included as a party to this action, see id. at 6-7. He also seeks an award of attorney's fees and costs for being "forced to defend against the action filed by [] Plaintiff." Id. at 7.

Plaintiff responded to each of Defendant Wall's arguments (which arguments and responses are discussed in more detail below); as part of its filing, Plaintiff submitted an Affidavit of Peter Bregman, the Vice President of Plaintiff's authorized representative (RSUI Group, Inc.), that itself contains numerous attachments.  Response to First Motion to Dismiss at Ex. A ("Bregman Affidavit").  The Bregman Affidavit was submitted to refute Defendant Wall's arguments relating to diversity jurisdiction.  See id.

In the Motion to Strike, Defendant Wall moves to strike the Bregman Affidavit, arguing that "Plaintiff would like for the Court to assume facts not in evidence and to speculate on evidence and the possibility that such evidence, if taken to a jury, would rise to the level of federal jurisdiction."  Motion to Strike at 1 (emphasis and some capitalization omitted).  Defendant Wall contends the Bregman Affidavit relies upon "hearsay exhibits" and is not properly filed because it is "hidden behind" the Response to First Motion to Dismiss.  Id. at 2-3 (emphasis omitted).  Defendant Wall also argues that he has not had the opportunity to cross-examine Mr. Bregman, and the attachments to the Bregman Affidavit cannot be authenticated by Mr. Bregman.  Id.; see also Defendant Wall's Reply Regarding Motion to Strike at 1.  Once again, Defendant Wall asks for attorney's fees and costs – this time for filing the Motion to Strike and for filing his First Motion to Dismiss.  Motion to Strike at 4; see also Defendant Wall's Reply Regarding Motion to Strike at 2.

Responding to the Motion to Strike, Plaintiff contends it is permitted to introduce evidence to show the amount in controversy given that Defendant Wall has challenged the Court's jurisdiction to hear the matter.  Response to Motion to Strike at 4-6.  Plaintiff also

argues the Bregman Affidavit and attachments withstand Plaintiff's evidentiary challenges. Id. at 6-8.

### 1.  Analysis Regarding Motion to Strike

At the outset, the undersigned finds that the Motion to Strike is due to be denied. "When a defendant challenges the jurisdictional amount in controversy, the burden is squarely placed on the shoulders of the plaintiff to show by a preponderance of the evidence that the jurisdictional requirements have been met." Kamau v. Slate, No. 4:11cv522-RH/CAS, 2013 WL 1883257, at *3 (N.D. Fla. Apr. 4, 2013) (unpublished report and recommendation) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Lowery v. Ala. Power Co., 483 F.3d 1184, 1210 (11th Cir. 2007)), accepted, 2013 WL 1882187, at *1 (N.D. Fla. May 6, 2013) (unpublished order).  The party having that burden "may rely on its own affidavits, declarations, or other documentation to establish the amount in controversy." McGee v. Sentinel Offender Servs., 719 F.3d 1236, 1241 (11th Cir. 2013) (citing Pretka v. Kolter City Plaza, II, 608 F.3d 744, 755 (11th Cir. 2010)).[6]  Accordingly, the Bregman Affidavit is properly considered by the Court.   Regarding Defendant Wall's evidentiary challenge, given that the evidence upon which the Bregman Affidavit relies (bills for medical services) was provided by counsel for the very Defendant who is now raising a "hearsay" challenge, the Court does not deem the challenge well taken.  Finally, the Bregman Affidavit is not "hidden"; it is simply attached to the Response to the First Motion to Dismiss.

---

[6]      These two cases are removal cases, but it would seem that their approval of a removing defendant relying on affidavits, declarations, and the like would extend equally in this situation, in which Plaintiff has the burden of proof as to the jurisdiction question.

It is not uncommon for evidence in support of a contention to be submitted in this fashion. For the foregoing reasons, it is recommended that the Motion to Strike be denied.

### 2.  Analysis Regarding First Motion to Dismiss

#### a.  Permissive Jurisdiction Under the Declaratory Judgment Act

Defendant Wall contends that the Court should not exercise jurisdiction pursuant to the Declaratory Judgment Act.  See First Motion to Dismiss at 1-3.  The Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  The Act "'confers a discretion on courts rather than an absolute right upon the litigant.'"  Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995)).  A district court has "unique and substantial" discretion in deciding whether to hear an action brought under the Act.  Wilton, 515 U.S. at 286.  This type of discretion "'allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.'"  Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) (quoting Rasbury v. IRS, 24 F.3d 159, 168 (11th Cir. 1994)); see also Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 77 (11th Cir. 2013) (citation omitted).  "[T]he Supreme Court has warned against a 'rigid' and 'mechanical' approach in applying the Federal Declaratory Judgments Act," Manuel, 430 F.3d at 1135 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)), and has further "warned that 'gratuitous interference with the orderly and comprehensive disposition

of a state court litigation should be avoided.'" Ameritas Variable Life Ins. Co., 411 F.3d at 1330 (quoting Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)).[7]

Here, although it is entirely possible that a related state court proceeding could be initiated, one is not currently pending. See Supplemental Response to First Motion to Dismiss at 4-7. Indeed, in arguing against this Court exercising jurisdiction pursuant to the Declaratory Judgment Act, Defendant Wall relies solely on the fact that the Court will have to interpret and apply Florida law, contending that consequently, "this action would be more appropriate brought before [a] Florida Court[]." First Motion to Dismiss at 2-3. The main case upon which Defendant Wall relies in support of his argument, though, see id. at 2 (citing Prof. Solutions Ins. Co. v. Gillespie Miscavige Ferdin LLC, No. 3:12cv1382, 2012 WL 3011706 (M.D. Pa. 2012) (unpublished)), is distinguishable given that the court in that case recognized

---

[7]     Heeding these admonitions, the United States Court of Appeals for the Eleventh Circuit has provided the following non-exclusive factors for district courts to consider in determining whether to hear an action brought under the Declaratory Judgment Act when there is a parallel state proceeding:

(1)     the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2)     whether the judgment in the federal declaratory action would settle the controversy;

(3)     whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4)     whether the declaratory remedy is being used merely for the purpose of "procedural fencing"–that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case not otherwise removable;

(5)     whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6)     whether there is an alternative remedy that is better or more effective;

(7)     whether the underlying factual issues are important to an informed resolution of the case;

(8)     whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9)     whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas Variable Life Ins. Co., 411 F.3d at 1331.

there was a related matter pending in state court.  See also, e.g., Ameritas Variable Life Ins. Co., 411 F.3d at 1330 (same); State Auto Ins. Cos. v. Summy, 234 F.3d 131, 131-37 (3d Cir. 2001) (holding a district court should have declined jurisdiction under the Act when there was a pending case in state court "on the same issues" and discussing the state interest in adjudicating matters involving state law that is "uncertain or undetermined").  In short, the simple fact that the Court may have to interpret and apply Florida law – without any indication from the parties that the issue(s) in the case are unsettled in the state courts and in the absence of a parallel state proceeding – is not enough to convince the undersigned that the Court should decline jurisdiction pursuant to the Act.[8]

The Court must also determine whether it has an independent source of jurisdiction. This is so because "[t]he operation of the Declaratory Judgment Act is procedural only," Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950), and the Act "does not extend the jurisdiction of the federal courts," Medtronic, Inc. v. Mirowski Family Ventures, LLC, ___ U.S. ___, 134 S. Ct. 843, 848 (2014) (internal quotations and citations omitted from both quotes).

Plaintiff attempts to invoke the Court's jurisdiction through complete diversity of citizenship under 28 U.S.C. § 1332.  See Compl. (Doc. No. 1) at 1-2 ¶¶ 3-10.  "Where jurisdiction is predicated on diversity of citizenship, all plaintiffs must be diverse from all defendants."  Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 412 (11th Cir. 1999)

---

[8]    Defendant Wall does not challenge whether there is a justiciable controversy under the Act in the absence of an underlying case having been initiated thus far.  Upon review (and with the assistance of Plaintiff's Supplemental Response to First Motion to Dismiss), the undersigned is satisfied that there exists a justiciable controversy.  See Progressive Am. Ins. Co. v. Steele, 15 F. Supp. 3d 1240, 1245-46 (M.D. Fla. 2014).

(citation omitted).  Further, the amount in controversy must exceed $75,000.00, exclusive of interest and costs.  See id. (citation omitted); 28 U.S.C. § 1332(a).

According to Plaintiff, it "is, and was at all times material hereto, a foreign corporation incorporated in the State of New Hampshire with its principal place of business in the State of Georgia," and consequently, it is "a citizen of either New Hampshire or Georgia[.]"  Id. at 1-2 ¶ 3.  Plaintiff alleges that all three Defendants are citizens of Florida and reside in Duval County.  Id. at 2 ¶¶ 5-7.  Plaintiff further alleges that "[t]he amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorneys' fees."  Id. at 2 ¶ 9.

### b.  Challenge Regarding Diversity of Citizenship

Defendant Wall challenges whether Plaintiff has properly invoked the Court's jurisdiction based upon diversity of citizenship.  See First Motion to Dismiss at 3-6.  "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms": facial attacks and factual attacks.  Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990); see Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232-33 (11th Cir. 2008). "Facial attacks on the complaint require[ ] the court merely to look and see if [a] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  Lawrence, 919 F.2d at 1529 (citations and quotations omitted).  On a facial attack, a plaintiff is given similar safeguards as those afforded to plaintiffs who oppose a motion to dismiss for failure to state a claim–that is, "the court must consider the allegations of the complaint to be true."  Id. (citations omitted).  On the other hand, factual attacks "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and

-11-

affidavits, are considered." Id. (citations and quotations omitted).  When considering a factual

attack, a court "is free to weigh the evidence and satisfy itself as to the existence of its power

to hear the case.  In short, no presumptive truthfulness attaches to [a] plaintiff's allegations."

Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)[9] (quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  "[T]he party invoking the court's

jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting

the existence of federal jurisdiction."  McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir.

2002) (citation omitted); see OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002)

(citations omitted); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

Defendant Wall raises a factual attack on this Court's subject matter jurisdiction.  As such,

Plaintiff is not entitled to any safeguards regarding the truthfulness of its allegations, and

Plaintiff bears the burden of proving that subject matter jurisdiction does in fact exist.

Defendant Wall makes a number of arguments (without any citation to legal

authority[10]) in support of his challenge regarding diversity jurisdiction. See First Motion to

Dismiss at 3-6.  The undersigned addresses each in turn.

Initially, Defendant Wall contends that because Plaintiff is licensed to and indeed

conducts business in the State of Florida, it "should in essence be considered a Florida

business because of its voluntary submission to the jurisdiction of the State of Florida and

---

[9]      In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United
States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former
United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on
September 30, 1981.

[10]     A party ordinarily "abandons a claim when he either makes only passing references to
it or raises it in a perfunctory manner without supporting arguments and authority."  Sapuppo v. Allstate
Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (emphasis added) (citations omitted).

the Florida Office of Insurance Regulation, without which it could have never legally sold insurance to Defendant Busey." Id. at 3-4.  Defendant Wall's contention in this regard is unfounded because it is clear that Plaintiff, a foreign corporation, is a citizen of either New Hampshire (where it is incorporated) or Georgia (where it has its principal place of business). See 28 U.S.C. § 1332(c)(1) (stating "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business" with a limited exception not argued or applicable here); see also Rolling Greens MHP v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021 n.1 (11th Cir. 2004) (citation omitted).

Defendant Wall next points out that a "parent company" of Plaintiff, "RSUI," has on at least two occasions in apparently unrelated cases sought the same type of relief in state court that Plaintiff seeks here (a declaratory judgment), even when the damage claims were in excess of $75,000.00.  First Motion to Dismiss at 4-5.  Defendant Wall questions why Plaintiff would attempt to invoke this Court's jurisdiction in this instance when its parent company has not in the past. Id.  This is irrelevant to the issues in the case because Plaintiff, as the master of its Complaint, may choose whether to file its claim in state or federal court.

Then, Defendant Wall asserts that Plaintiff "is well aware [that Defendant House], at the time this action was filed was and is a resident of the State of Georgia," which Defendant Wall apparently believes would serve to defeat diversity jurisdiction because Plaintiff has its principal place of business in Georgia.  Id. at 5.  Defendant Wall fails to provide any factual support for his assertions that (1) Defendant House is a resident of the State of Georgia and

(2) Plaintiff was aware of this when it filed this action, see id.[11]; the undersigned refuses to accept the assertions without any support.  Additionally, citizenship for purposes of diversity jurisdiction is not determined by a person's residence, Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994); rather, it is determined by "domicile," or "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom," McCormick, 293 F.3d at 1257-58.  So, even if Defendant House has a residence in Georgia, without more, this fact is of no moment.

Plaintiff provides a number of reasons why "it is [Plaintiff's] belief that Defendant House was a citizen of Florida at the time the Complaint was filed[.]"[12]  Response to First Motion to Dismiss at 4-5.  These reasons are: (1) Defendant House was retained to perform work on a barn in Jacksonville, Florida in August 2013, about eight months prior to the initiation of this action[13]; (2) hospital statements for Defendant House provided by Defendant House's attorney to an independent claims adjuster retained by Plaintiff list Defendant House's address in Fernandina Beach, Florida; and (3) the process server found the same Fernandina Beach, Florida address for Defendant House.[14]  Id. at 4-5; Bregman Affidavit at

---

[11]     Plaintiff represents that the first time it became aware of such assertions was through the filing of Defendant Wall's First Motion to Dismiss.  Response to First Motion to Dismiss at 5.

[12]     "Diversity jurisdiction is unaffected by changes in citizenship of parties after [the] complaint has been filed."  Jones v. Law Firm of Hill & Ponton, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001) (citation omitted).

[13]     Defendant Wall admits that Defendant House lived in Florida when the alleged incident occurred.  See Defendant Wall's Reply Regarding First Motion to Dismiss at 3 (stating that "[t]his matter involves individuals who lived in Florida at the time of the incident").

[14]     The undersigned notes, however, that Plaintiff's Proofs of Service allege Defendant House was served with process at a residence in Cartersville, Georgia.  See Proof of Service (Doc. No. 21), filed August 15, 2014, at 1; Affidavit of Service (Doc. No. 28 at p. 12) and Amended Affidavit of

(continued...)

1-2, Ex. 1 (hospital statements).   Plaintiff has established by a preponderance of the evidence that Defendant House's citizenship was in Florida when this action commenced. See Jones, 141 F. Supp. 2d at 1355.

Defendant Wall's last argument relating to diversity jurisdiction is that Plaintiff has not sufficiently proved the requisite amount in controversy.  See First Motion to Dismiss at 5-7. He challenges the "bare, unsubstantiated claim" in the Complaint of more than $75,000.00 in controversy.  Id. at 5.  He further contends that this action should really be between Plaintiff and Defendant Busey, so excluding the other two Defendants, the amount in controversy requirement is not met because "it is speculative at best for this Court to assume that the controversy between [] Plaintiff and Defendant Busey rises to the level in excess of $75,000.00."  Id. at 5-7.   Defendant Wall's contention regarding the alleged improper inclusion of Defendants Wall and House is addressed fully below with the conclusion that all Defendants in this matter are properly named, so the only question to resolve regarding the amount in controversy is whether Plaintiff has proved an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

In a declaratory action, "the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) (citations omitted), superseded on other grounds, United Food & Commercial Workers Union Local 751 v. Brown Group, 517 U.S. 544 (1996).  More specifically, "when an insurer

---

[14](...continued)
Service (Doc. No. 28 at p.19), filed October 7, 2014.  Defendant House has submitted an affidavit of his own in alleging that he was not properly served with process (Doc. No. 23 at pp. 4-6).  His affidavit, signed more than four months after the initiation of this case, refers to this Cartersville residence as "[his house]" and claims he "live[s]" on the property, but does not provide any other information relevant to the citizenship issue.  Id.

seeks a declaratory judgment regarding the coverage provided by an insurance policy, [that value] is the plaintiff's potential liability under the policy, plus potential attorneys' fees, statutory damages and punitive damages." Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911-12 (5th Cir. 2002) (quotation and citation omitted); see Phillips Excavating & Const. v. Mount Vernon Fire Ins., No. 8:08-cv-746-T-17EAJ, 2008 WL 2856579, at *3 (M.D. Fla. July 22, 2008) (unpublished) (quotation and citations omitted). In other words, "the value of the declaratory relief is the amount the plaintiff would recover or avoid losing if the declaratory relief was granted." Phillips, 2008 WL 2856579, at *3 (citations omitted). This necessarily requires a court to take into account the policy limits. See Hartford, 293 F.3d at 911 (recognizing other cases stating "that when a claim exceeds the policy limits, the policy limits, rather than the larger value of the claim, determine the amount in controversy"); see also Clarendon Am. Ins. Co. v. Miami River Club, Inc., 417 F. Supp. 2d 1309, 1316 (S.D. Fla. 2006) (identifying factors to consider as "(1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit") (citations omitted).

Here, the Policy at issue has a $1 million "Each Occurrence Limit," and a $5,000.00 per person "Medical Expense Limit." Compl. at Ex. A p. 19.[15] All parties that have weighed in on the issue agree that the applicable Policy limit is $1 million, see Supplemental Response to First Motion to Dismiss at 1-2; Defendant Busey's Reply at 2,[16] and the

---

[15]    Citations to this exhibit are to the pagination assigned by the Court's electronic filing system.

[16]    Despite being afforded an opportunity, see Order entered December 10, 2014 (Doc. No. 34), Defendant Wall has elected not to address the Policy limit issue, see generally Defendant Wall's

(continued...)

undersigned agrees.[17]  So, the question becomes whether the claimed amount of damages exceeds the jurisdictional threshold.  See Goodin v. Fidelity Nat'l Title Ins., No. 3:11-cv-149-J-32JRK, 2012 WL 473913, at *3 (noting that "[m]any courts have held that it is the value of the claim at issue, not the value of the policy limit, that is considered for purposes of determining the amount in controversy") (citations omitted).

Plaintiff alleges that Defendant Wall's counsel submitted to Plaintiff hospital statements for him alone claiming nearly $480,000.00 in medical services related to the underlying accident; Defendant House similarly submitted hospital statements through the same counsel totaling nearly $45,000.00.  Response to First Motion to Dismiss at 8, 8 n.1 (citing Bregman Aff. ¶ 4, Ex.1).  These Defendants, through the same counsel, demanded that the medical "bills be paid, along with compensation for lost wages, future medical expenses, and any residual permanent injury."  Supplemental Response to First Motion to Dismiss at Ex. A.  The Court is permitted to consider these pre-suit demands in deciding the amount in controversy.  See, e.g., Kilmer v. Stryker Corp., No. 5:14-cv-456-Oc-34PRL, 2014 WL 5454385, at *4 (M.D. Fla. Oct. 27, 2014) (unpublished) (considering a pre-suit demand letter; noting it did not request a specific amount but totaled medical expenses at $72,792.93 and  sought "additional damages to compensate [the plaintiff] for pain and suffering, future

---

[16](...continued)
Reply Regarding First Motion to Dismiss.

[17]        As explained in more detail later, Plaintiff heavily relies on medical bills in an attempt to prove the amount in controversy.  In the Order entered December 10, 2014, it was observed that one interpretation of the $5,000 per person "Medical Expense Limit" could lead to the conclusion that the medical expense limit would be applicable to claims made by Defendants Wall and House for their medical bills.  See Order (Doc. No. 34).  Accordingly, Plaintiff was directed to address its Policy limits in the context of the definitions provided in the Policy.  Plaintiff did so to the undersigned's satisfaction in its Supplemental Response to Motion to Dismiss, as did Defendant Busey in his Reply.

medical expenses, and lost wages"; and finding these damages could be combined with the medical expenses to drive the amount in controversy past $75,000.00).  The undersigned finds that when the claimed medical expenses are considered, alone or in combination with the other claimed damages, Plaintiff has proved "by a preponderance of the evidence that the claim upon which [Plaintiff] is basing jurisdiction meets the jurisdictional minimum." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (citations omitted).

### c.  Inclusion of Defendants Wall and House in the Declaratory Action

Finally, Defendant Wall contends that he and Defendant House are improperly named as defendants in this action.  He is mistaken.  If these two Defendants, who are making claims under the Policy, were not named as parties in this declaratory judgment action, they would not be bound by the Court's determination.  Balfour Beatty Const. v. Zurich Am. Ins. Co, No. 2:13-cv-205-FtM-38CM, 2014 WL 1230650, at *3 (M.D. Fla. Mar. 25, 2014) (unpublished) (citations omitted); see Am. Safety Cas. Ins. v. Condor Assocs., 129 F. App'x 540, 541 (11th Cir. 2005) (holding district court did not abuse its discretion in dismissing declaratory judgment action for an insurance company plaintiff's failure to join indispensable parties who were suing an insurance company's insured in an underlying action in state court).  This would undermine "the legal effect of the Court's decision[.]"  Balfour Beatty Const., 2014 WL 1230650, at *3.

### d.  Recommended Disposition of First Motion to Dismiss

For the foregoing reasons, the First Motion to Dismiss is due to be denied in its entirety, including the request for attorney's fees and costs.

**B.  Second Motion to Dismiss**

Through the Second Motion to Dismiss, Defendant Wall argues that Plaintiff has violated Rule 19, Federal Rules of Civil Procedure ("Rule(s)"), by failing to join indispensable parties.  See Second Motion to Dismiss at 4-5.  Specifically, Defendant Wall contends that the following individuals should be joined as defendants in this matter: John Bamping (a/k/a Jack Bamping), the contractor for whom Defendants Wall and House were performing work when the alleged incident occurred, id. at 2; "all of the entities that provided materials or work for [Defendant] Busey . . . , which would include Legacy Construction of Jax, Inc., John H. Bamping Construction, Inc. . . . , and New Life Restorations," id. at 3; people who and companies that "witnessed, constructed, or participated in the construction of the barn," including "Bug Away Specialists, Inc., Ferrie's Decorative Concrete, Inc., John Bamping [(the contractor)], Justin Thomas, Ronald Wall [(currently a Defendant)], James House [(currently a Defendant)], Craig Parsons, and Joe Norden," id.  Because all of these individuals and companies are not joined, Defendant Wall seeks dismissal of the case.  Id. at 1, 5.  Once again, Defendant Wall seeks attorney's fees and costs for being "forced to defend against the action filed by [] Plaintiff."  Id. at 5.

Rule 12(b)(7) allows for a party to move for dismissal of an action for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  Rule 19 provides in relevant part:

> (a) **Persons Required to be Joined if Feasible.**
> > (1) ***Required Party.***  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> > > (A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) ***Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a)(1)-(2). The Rule 19 joinder requirements are not met here with respect to any of the persons and entities that Defendant Wall believes should be joined and are not. None of these persons or entities (other than the named Defendants) have made claims under the Policy at issue, and none of them were allegedly injured in the accident; at most, these persons and entities are potential witnesses in the case. See Response to Second Motion to Dismiss at 2-3, 6-8. Accordingly, the Second Motion to Dismiss is due to be denied in its entirety, including the request for attorney's fees and costs.

## IV. Conclusion

In accordance with the foregoing, it is

**RECOMMENDED THAT**:

1.    "Defendant Wall's Motion to Strike Exhibits Attached to Plaintiff['s] Opposition to Defendant Wall's Motion to Dismiss / Motion to Remove" (Doc. No. 12) be **DENIED**;

2.    Defendant Wall's "Motion to Dismiss or Otherwise Remove Case to State Court" (Doc. No. 9) be **DENIED**;

3.    "Defendant Wall's Second Motion to Dismiss" (Doc. No. 27) be **DENIED**; and

4.      Defendant Wall be permitted **fourteen (14) days** following the entry of an Order on these Motions within which to file and serve a response to the Complaint.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 15, 2015.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record